Weygandt, C. J.
The Supreme Court of the United States held that federal due process neither prohibits nor cornpels the taking of jurisdiction by the courts of a state in an action against a foreign corporation where the cause did not arise in that state or relate to the corporation’s activities therein.
Hence, in the absence of some other theory, this holding requires the overruling of paragraph one of the syllabus in the previous decision of a majority of this court in these causes, 155 Ohio St., 116, which was based on the sole ground that federal due process prohibits the exercise of such jurisdiction by a state court.
With this federal difficulty now removed, should the courts of this state assume jurisdiction in an action against a foreign corporation under the particular facts of these cases?
Although there is a division of authority on the subject, the majority rule and the better reasoned view are well summarized in the following statement in 23 American Jurisprudence, 502, Section 496:
“The weight of modern authority supports the proposition that where jurisdiction is not limited by statute to causes of action arising within the state, an action may be maintained against a foreign corporation in the state or federal courts within a state in which it is doing business, by a resident or a nonresident of the state or by another foreign corpora *148 tion, on any transitory cause of action, even though the cause of action arose neither within the state nor out of the business done by the corporation therein. In other words, a foreign corporation may be sued on a transitory cause of action in any jurisdiction where such corporation can be found, and the residence of the plaintiff and the place at which the cause of action arose are not material questions to be determined to maintain jurisdiction if the corporation can be found and served. The mere fact that the cause of action arose outside, or out of transactions beyond the limits of, the state where the action is brought does not, according to the weight of authority, prevent effective service of process upon an actual agent or officer of the corporation where the other conditions of service are satisfied.”
Was the defendant corporation doing business in this state at the time these actions were instituted?
On this question the parties to these actions are in vigorous disagreement.
In the syllabus and in the opinion announced by this court in the previous decision, supra, it was assumed that the defendant corporation was doing business in this state; and the discussion in the opinion of the federal reviewing court leaves little to the imagination on this point. One of its statements is as follows:
“The corporation has been carrying on in Ohio a continuous and systematic, but limited, part of its general business. Its president, while engaged in doing-such business in Ohio, has been served with summons in this proceeding.”
In another sentence in the federal court opinion the company’s activities are described as “continuous and systematic corporate activities * * * consisting of directors’ meeting’s, business correspondence, banking, stock transfers, payment of salaries, purchasing-of machinery, etc.”
*149 And in still another part of the opinion reference is made to the evidence as summarized by the Court of Appeals:
“From that summary the following facts are substantially beyond controversy: The company’s mining properties were in the Philippine Islands. Its operations there were completely halted during the occupation of the Islands by the Japanese. During that interim the president, who was also the general manager and principal stockholder of the company, returned to his home in Clermont county, Ohio. There he maintained an office in which he conducted his personal affairs and did many things on behalf of the company. He kept there office files of the company. He carried on there correspondence relating to the business of the company and to its employees. He drew and distributed there salary checks on behalf of the company, both in his own favor as president and in favor of two company secretaries who worked there with him. He used and maintained in Clermont county, Ohio, two active bank accounts carrying substantial balances of company funds. A bank in Hamilton county, Ohio, acted as transfer agent for the stock of the company. Several directors’ meetings were held at his office or home in Clermont county. From that office he supervised policies dealing with the rehabilitation of the corporation’s properties in the Philippines and he dispatched funds to cover' purchases of machinery for such rehabilitation. Thus he carried on in Ohio a continuous and systematic supervision of the necessarily limited wartime activities of the company. He there discharged his duties as president and general manager, both during the occupation of the company’s properties by the Japanese and immediately thereafter.' While no mining properties in Ohio were owned or operated by the company, *150 many of its wartime activities were directed from Ohio and were being given the personal attention of its president in that state at the time he was served with summons. ”
The defendant corporation insists that some of these statements are inaccurate and that it is not the function of this or the federal court to decide controverted questions of fact. However, it is the duty of this court to determine the legal effect of facts that are not in controversy.
"This court does not presume to hold that any single fact here disclosed is conclusive evidence of doing business in this state. But the court does hold that the cumulative effect of the uncontroverted facts is such as to constitute a clear le^al status of doing business here, and hence there is|no apparent reason for favoring the corporation by granting it immunity from the jurisdiction of the courts of this state.!
Counsel for the defendant corporation rely strongly on the decision of this court in the case of Loftus v. Pennsylvania Rd. Co., 107 Ohio St., 352, 140 N. E., 94. However, that decision is of no assistance here, inasmuch as it was based on a special statute relating to railroads alone.
^The judgments of the Court of Appeals are reversed and the causes are remanded to the Court of Common Pleas with instructions to overrule the motions to quash the service of summons.'

Judgments reversed.

Zimmerman, Stewart, Middleton, Matthias and Hart, JJ., concur.